**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tierra Leann Myers, | No. CV-23-01901-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Experian Information Solutions Incorporated, | |
| Defendant. | |

Defendant Experian Information Solutions, Inc. ("Defendant") has filed a Motion to Compel Arbitration against Plaintiff Tierra Leann Myers ("Plaintiff"). (Doc. 34). Defendant asks the Court to order the parties to arbitrate Plaintiff's claims and stay this action until arbitration has been completed. (*Id*. at 2). The matter is fully briefed. (Docs. 39 & 45). For the following reasons, the Court grants Defendant's Motion.

**I.   Background**

As alleged in the Complaint, in 2019, Plaintiff took out an auto loan with Auto Now Financial Services ("Auto Now")[1] to purchase a vehicle. (Doc. 1 at ¶ 46). Plaintiff fell behind on this loan and her vehicle was repossessed in 2020. (*Id*. at ¶ 47). In 2022, Auto Now secured a writ of garnishment for the amount Plaintiff still owed on her loan. (*Id*. at ¶ 49). After the writ of garnishment was entered, and Plaintiff paid a portion of the loan, she noticed that her credit report was showing an inaccuracy. (*Id*. at ¶ 52). Her account did not show the current balance of her loan being decreased, which Plaintiff

---

[1] Auto Now was a party to this suit but has since been dismissed. (Doc. 32).

alleges she whittled down to $2,231 from $14,403.95. (*Id*. at ¶¶ 49–50, 53). Plaintiff notified Defendant of this inaccuracy and asked it to reinvestigate the disputed information, correct their inaccurate reporting, and send her a corrected copy of her credit report. (*Id*. at ¶ 59). Plaintiff states that, even after she had paid off the remainder of the loan amount, Defendant was still reporting the loan inaccurately: with the original balance still showing. (*Id*.) She therefore contacted Defendant to again request a reinvestigation and correct the reporting. (*Id*. at ¶ 76).

Plaintiff's Complaint alleges that Defendant failed to correct the inaccurate balance and payment history information in Plaintiff's credit file. (*Id*. at 93). Plaintiff has brought claims for (1) failure to follow reasonable procedures to assure maximum possible accuracy; and (2) failure to perform a reasonable reinvestigation against Defendant. (*Id.* at ¶¶ 133–140; 141–149).

After Plaintiff brought these claims against Defendant, Defendant filed its Motion to Compel Arbitration. (Doc. 34). The Motion is supported by the Declaration of Mr. Dan Smith ("Mr. Smith's Declaration"), Defendant's Director of Product Operations. (Doc. 34-1 at ¶ 1). Defendant contends that when Plaintiff signed up for "CreditWorks," a credit monitoring service with Defendant's corporate affiliate, ConsumerInfo.com, Inc. (which does business as Experian Consumer Services ("ECS")), she agreed to arbitrate any claims against Defendant. (Doc. 34 at 2–3). Both ECS and Defendant are wholly owned by Experian Holdings, Inc. and share the same parent company: Experian PLC. (Doc. 39-3 at ¶ 2). Mr. Smith explains in his Declaration that to enroll in CreditWorks, users must complete the Sign-Up Page, which requires certain personal information to create an account. (Doc. 34-1 at ¶ 3). Upon clicking the "Create Your Account" button, users receive a disclosure that states in bold text, "I accept and agree to your Terms of Use Agreement . . ." (*Id*.) Users have the opportunity to click on a hyperlink, which was off set in blue text, and, if clicked, would have presented her with the full text of the terms of use agreement ("Terms of Use Agreement"). (*Id*. at ¶ 4). The Terms of Use Agreement in effect during Plaintiff's enrollment in CreditWorks contained an arbitration provision (the

"Arbitration Agreement") (id. at ¶ 6), which provides in relevant part that "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration." (Doc. 34-1 at 12).

> The agreement to arbitrate also states that it includes, but is not limited to:
>
> claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute (including, without limitation, the Credit Repair Organizations Act) fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement.

(*Id*.) The Arbitration Agreement further provides that "[f]or purposes of this arbitration provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries [or] *affiliates*." (*Id*.) (emphasis added). It also states that a party intending to seek arbitration must send a "Notice of Dispute" to Defendant's general counsel. (*Id*.)

**II.     Legal Standard**

The Federal Arbitration Act ("FAA") allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. If a party has failed to comply with a valid arbitration agreement, the district court must compel arbitration. *Id.* The district court must also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. *Id.* at § 3; *see also Smith v. Spizzirri*, 601 U.S. __, 2024 WL 2193872, at *4 (May 16, 2024) (holding that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding" rather than dismissing the suit).

In determining whether to compel arbitration, the court must limit its review to (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer is affirmative on both queries, then the court must enforce the arbitration agreement in accordance with its terms. *Id*. If a genuine dispute of material fact exists as to these queries, a court should apply a "standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

Arbitration agreements governed by the FAA are presumed to be valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987). The FAA's saving clause, however, "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also* A.R.S. § 12–3006(A) ("An agreement . . . to arbitrat[e] any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of a contract."). The party opposed to arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

### III. Discussion

Plaintiff argues that (1) Mr. Smith's Declaration Defendant relies on to establish a valid arbitration agreement exists is inadmissible and cannot support Defendant's Motion and (2) Mr. Smith's Declaration fails to demonstrate Plaintiff's assent to arbitrate. (Doc. 39 at 6, 13). Defendant notes in its Reply that the narrow issue before the Court is whether there is a valid agreement to arbitrate since Plaintiff does not challenge the

enforceability of the arbitration agreement or delegation clause. (Doc. 45 at 1). The Court will address each argument in turn.

### A. The Declaration's Admissibility

As an initial matter, Plaintiff argues that Mr. Smith's Declaration "fails to meet minimum evidentiary standards for admissibility"—therefore—it cannot support the existence of a valid arbitration agreement. (Doc. 39 at 6). Not so.

On a motion to compel arbitration "the Court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 932 (S.D. Cal. 2022) (quoting *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011); *see also* Fed. R. Civ. P. 56(c). Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Federal Rule of Evidence 602 instructs that "[e]vidence to prove personal knowledge may consist of the witness's own testimony," and "may be inferred from a declarant's position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (citations omitted).

Mr. Smith demonstrates in his affidavit that he has personal knowledge of the facts relevant to the Arbitration Agreement. He states that he is "the Director of Product Operations for ConsumerInfo.com" which does business as Experian Consumer Services. (Doc. 34-1 at ¶ 1). Mr. Smith states that his duties include "supporting the consumer enrollment process" which requires familiarity with the Terms of Use that must be accepted by users. (*Id.*) He further states that he is familiar with these same enrollment processes for CreditWorks. (*Id.*) Mr. Smith asserts, under penalty of perjury, that Plaintiff enrolled in CreditWorks on March 28, 2020, and that to successfully enroll she would have had to accept the Terms of Use Agreement—which include the Arbitration Agreement. (*Id.* at ¶ 3). From this information, the Court finds that Mr. Smith's Declaration meets the minimum standards for consideration under Federal Rule of Civil Procedure 56(c).

*See* Fed. R. Civ. P. 56(c); *see also Chien*, 641 F. Supp. 3d at 932.

### B.   Lack of Mutual Assent

Plaintiff next argues that Mr. Smith's declaration does not show that she assented to the Arbitration Agreement. (Doc. 39 at 13). In deciding whether parties have agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In Arizona, for a valid contract to exist, the contract must "manifest mutual assent, i.e., the parties' intent to be bound." *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1064 (D. Ariz. 1997) (citing *Keith Equip. Co. v. Casa Grande Cotton Fin., Co.*, 928 P.2d 683, 685 (Ariz. Ct. App. 1996)). This analysis focuses on objective evidence, not the parties' hidden intent. *Silva v. Butori Corp.*, 2020 WL 2308528, at *4 (D. Ariz. May 8, 2020). "Objective evidence includes written and spoken words as well as acts." *Johnson v. Earnhardt's Gilbert Dodge, Inc*., 132 P.3d 825, 828 (Ariz. 2006) (citing *Corbin–Dykes Elec. Co. v. Burr*, 500 P.2d 632, 634 (Ariz. Ct. App. 1972)) (holding that the manifestation of mutual assent "is determined by the words used and the other manifestations of intent having reference to the contract"). The requirement of mutual assent applies "with no less vigor to formation of arbitration contracts." *Silva*, 2020 WL 2308528, at *4.

Where evidence of a plaintiff's actual knowledge of an internet agreement is absent, the Ninth Circuit has opined that a website operator may establish an enforceable internet contract on an "inquiry notice theory," but only if the court finds that "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).[2]

---

[2] The Ninth Circuit has explained, as Plaintiff notes, that contracts formed over the Internet generally fall into two categories: (1) "'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use"; and (2) "'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1175–76 (9th Cir. 2014). Courts routinely find clickwrap agreements enforceable but are generally more reluctant to enforce browsewrap agreements. *Berman,* 30 F.4th at 856. Websites

### 1. Reasonably Conspicuous Terms

To establish that Plaintiff had constructive or inquiry notice of the Terms of Use Agreement, Defendant must first show that the terms were "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 2020 WL 5210912, at *2. Courts look to "the conspicuousness and placement of the 'Terms of Use' hyperlink, other notices given to users of the terms of use, and the website's general design" in determining "whether a reasonably prudent user would have [had] inquiry notice." *Nguyen*, 763 F.3d at 1177.

The Court finds that a reasonable Internet user would have seen the notice and would have been able to locate the Terms of Use Agreement via the hyperlink. *See Arciniega v. Experian Info. Sols., Inc.*, 2023 WL 6803084, at *3 (D. Ariz. Oct. 12, 2023). Defendant has provided the account creation page as it existed in 2020 and the notice is conspicuously displayed directly above the "Create Your Account" button and is in regular sized, bold font. (Doc. 34-1 at 8). The page states "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement", as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." (*Id*.) This page also states "I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s)." (*Id*.) The "Terms of Use Agreement" hyperlink is "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023). Based on these features, the Court finds that the website design provides constructive notice of the Terms of Use Agreement. *See id*. (finding constructive notice of the terms based on similar website features).

---

also frequently present some "hybrid of the two, such as putting a link to the terms of the agreement on the page, sometimes near a button the user must click to continue." *Berman v. Freedom Fin. Network, LLC*, 2020 WL 5210912, at *2 (N.D. Cal. Sept. 1, 2020). Plaintiff states that the contract at issue is a "hybrid" because the CreditWorks site utilizes a "'browse-wrap' hyperlink that leads to a lengthy 'Terms of Use' documents containing, in relevant part, an arbitration agreement embedded in the purported terms above a 'clickwrap' 'I agree' button." (Doc. 39 at 15–16). Defendant does not object to this characterization.

### 2. Unambiguous Manifestation of Assent

Second, Defendant must also show that Plaintiff unambiguously manifested her assent to be bound by the Agreement. *See Berman*, 30 F.4th at 857. For Internet agreements, a consumer's "click of a button can be construed as an unambiguous manifestation of assent *only* if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id*. (internal citation omitted) (emphasis added). The notice must also "explicitly notify a user of the legal significance of the action [they] must take to enter into a contractual agreement." *Id*. at 858.

Plaintiff argues that she was not aware that she agreed to arbitrate her claims against Defendant, did not see the agreement when she signed up for CreditWorks, and states that she does not recall agreeing to the Terms of Use Agreement. (Doc. 39-1at ¶¶ 2–6). But Plaintiff's declaration falls short of showing that the arbitration agreement at issue here is invalid due to her lack of assent. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92 (noting that the party opposed to arbitration must show the arbitration agreement is invalid or does not encompass the claims at issue to avoid arbitration). In Arizona, parties have a duty to read agreements that they accept. *See e.g., In re Rodriguez*, 361 B.R. 887, 893 (Bankr. D. Ariz. 2007) ("The general rule under Arizona law is that parties have a duty to read the agreements they sign and if they do not do so, they will not be permitted to avoid a contract because they supposed its terms were different than what they really were.") (citing *Mutual Benefit Health & Accident Association v. Ferrell*, 42 Ariz. 477, 487, 27 P.2d 519, 523 (Ariz.1933) (overruled on other grounds)); *see also CMS Mech. Servs., LLC v. PetSmart, Inc.*, 2018 WL 1586647, at *14 (D. Ariz. Mar. 31, 2018).

Plaintiff's contentions that she does not recall agreeing to the Terms of Use Agreement or that she is not aware that she agreed to arbitrate her claims against Defendant fall short of showing that the Arbitration Agreement is invalid in light of her duty to read the Agreement before accepting it. *See CMS Mech. Servs., LLC*, 2018 WL 1586647, at *14. Plaintiff may not remember agreeing to the Arbitration Agreement, but Plaintiff does

not contest that she has an account with CreditWorks. (Doc. 39). She also does not contend that users of CreditWorks must agree to the Terms of Use Agreement when creating their account. (*Id*.) She does argue, however, that Mr. Smith does not have adequate personal knowledge to make these declarations. (Doc. 39 at 9). But, as the Court found above, Mr. Smith demonstrates in his affidavit that he has personal knowledge of the facts relevant to the Arbitration Agreement because his duties include "supporting the consumer enrollment process" which requires familiarity with the Terms of Use that must be accepted by users. (Doc. 34-1 at ¶ 1). Therefore, this argument also fails.

Moreover, other courts within this district and circuit have considered the validity of the same arbitration agreement between Defendant Experian and CreditWorks users, such as Plaintiff, and have concluded that the website's features provided constructive notice of the terms and therefore a valid, enforceable agreement. *See Arciniega*, 2023 WL 6803084, at *3 ("The court finds that due to these specific measures, a reasonable user would have seen the notice and been able to locate the Terms of Use Agreement via the hyperlink. This is all that is needed to provide conspicuous notice and create an enforceable contract."); *see also Capps v. JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at *5 (E.D. Cal. Apr. 21, 2023) ("the court finds that the website provided sufficient notice of the Terms of Use Agreement, and therefore that there was a binding arbitration agreement between plaintiffs and ECS.").

From the above, the Court finds that the CreditWorks's sign up page provided Plaintiff with sufficient notice of the Terms of Use Agreement, therefore, a binding arbitration agreement exists between Plaintiff and Defendant. Plaintiff may not recall her acceptance of Defendant's Terms of Use Agreement, but objective evidence exits in the record that demonstrates her manifestation of intent to be bound by the Agreement, *Silva*, 2020 WL 2308528, at *4; therefore, the Court "*must* compel arbitration." 9 U.S.C. § 4 (emphasis added); *see also Chiron Corp.*, 207 F.3d at 1130 (same).

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 34) is

1. **GRANTED**.
2. **IT IS FURTHER ORDERED** this action is **stayed** pending the completion of arbitration between Plaintiff and Defendant. The parties shall file joint status reports with the Court every ninety (90) days and a status report within five (5) days of the final arbitration order.

Dated this 20th day of May, 2024.

Honorable Diane J. Humetewa
United States District Judge